UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

GARY J.,[1]

                Plaintiff,

v.                                            6:19-CV-1186 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

STEVEN R. DOLSON, for Plaintiff
MOLLY CARTER, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER
United States Magistrate Judge

**MEMORANDUM-DECISION AND ORDER**

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 7).

**I.    PROCEDURAL HISTORY**

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on April 6, 2012, alleging disability beginning June 15, 2011. (Administrative Transcript ("T.") 52-53, 64-79, 148). These applications were initially denied on May 10, 2012. (T. 52-53, 64-79). Plaintiff made a timely request for a hearing, which was held on February 4, 2013 before Administrative

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

Law Judge ("ALJ") Julia D. Gibbs. (T. 24-51). On March 1, 2013, ALJ Gibbs issued an unfavorable decision. (T. 13-19). The Appeals Council denied plaintiff's request for review of the ALJ's decision. (T. 1-3). Plaintiff filed an action in the Northern District of New York, challenging the Commissioner's decision. *Gary J. v. Comm'r of Soc. Sec.*, 8:15-CV-436 (GTS). On July 15, 2016, Chief Judge Glenn T. Suddaby reversed and remanded the Commissioner's decision for further administrative proceedings, specifically to consider the opinions of two of plaintiff's treating physicians. (T. 664, 667-77) (copy of Chief Judge Suddaby's 7/15/16 Decision and Order). On October 20, 2016, the Appeals Council remanded plaintiff's case to an ALJ for evaluation in accordance with Chief Judge Suddaby's decision. (T. 682).

In its October 20, 2016 order, the Appeals Council also consolidated plaintiff's subsequent applications for both DIB and SSI, which plaintiff filed on March 21, 2016 and were initially denied in May of 2016.[2] (T. 682, 726-27). The new hearing began before ALJ Gibbs on February 14, 2017, but was postponed for plaintiff to hire an attorney and obtain additional medical evidence. (T. 591-97). The hearing was reconvened on May 31, 2017 before ALJ Lisa Martin. (T. 598-629). Plaintiff appeared with counsel, and ALJ Martin also heard testimony from Vocational Expert ("VE") Carly Coughlin. (*Id.*) On October 11, 2017, ALJ Martin issued an unfavorable decision. (T. 731-42).

On January 31, 2019, the Appeals Council reviewed ALJ Martin's decision and determined that the plaintiff's applications were not properly consolidated pursuant to

---

[2] The subsequent applications alleged a disability onset date of March 2, 2013. (T. 704).

its October 20, 2016 order. (T. 751-52).  The Appeals Council remanded the case to a third ALJ for proper consideration. (T. 751-52).  The Appeals Council directed specific actions by the ALJ on remand. (T. 752).  Plaintiff appeared with counsel at a video hearing before ALJ Elizabeth Koennecke on June 17, 2019. (T. 630-54).  At the June 2019 hearing, the ALJ also heard testimony from VE Michelle Urbacher. (T. 642-54). On July 11, 2019, ALJ Koennecke issued an unfavorable decision, finding that plaintiff was not disabled from his original alleged onset date of June 15, 2011 to the date of her decision. (T. 554-79).  Because the plaintiff did not file exceptions to the ALJ's decision, and the Appeals Council did not review the ALJ's decision on its own, the ALJ's decision became the final decision of the Commissioner sixty-one days after ALJ Koennecke's decision. (T. 552) (20 C.F.R. §§ 404.984(d), 416.1484(d)).  Plaintiff has filed this action, requesting review of the Commissioner's final decision.

## II. GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless

of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hire if he applied for work

42 U.S.C. § 1382(a)(3)(B). The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled with-out considering vocational factors such as age, education, and work experience… Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B. Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v.*

*Soc. Sec. Admin. Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review, "even more so than the 'clearly erroneous standard.'" *Brault,* 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (Finding we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "pick and choose evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112 (W.D.N.Y. Dec. 6, 2010).

### III. <u>FACTS</u>

The majority of the plaintiff's 2019 administrative hearing was devoted to questioning plaintiff about his former work and questioning the VE about the possibility that plaintiff could still perform other work in the national economy, based on his RFC. Plaintiff was born on May 16, 1972, making him 39 years old at the time of his original disability onset date. (T. 633). In his March 21, 2016 application, plaintiff alleged that he was disabled as the result of Post Traumatic Stress Disorder ("PTSD"), anxiety, depression, right hip deformity, degenerative disc disease, and arthritis in his back, hip, and knees. (T. 704-705). Plaintiff had a high-school education and previous work experience as an order puller/warehouse worker and forklift operator. (T. 575, 634, 641-42).

From 2007 to 2012, plaintiff worked at Alfred Publishing, first as a "picker" and then as a forklift operator. (T. 641). The order picker position involved walking around with a cart and an order sheet, "picking" music books from the shelves. (T. 642). He would continue to push the cart and select the appropriate books off the shelves until the order was filled. (T. 644). If the order was large, by the time plaintiff was finished, the cart could contain 60-70 books, weighing up to 150 pounds. (*Id.*) Plaintiff was given thirty minutes for lunch and "a couple" of ten minute breaks, but was on his feet the rest of the 8-hour shift. (*Id.*)

The forklift operator position involved driving a forklift and picking up items to put on a pallet. (T. 642). However, plaintiff testified that it was a "man-up forklift," so he was required to stand in order to drive it. (T. 644). Plaintiff stated that he drove the

forklift to different locations in the warehouse to pick up cases of books and stack them on the pallet, returning only when the order was complete. (T. 645). Plaintiff testified that the job involved constant reaching to get the cases of books onto the pallet. (*Id.*)

At ALJ Koennecke's 2019 hearing, she also questioned plaintiff about the work that he did after his alleged date of onset. (T. 634-37). From March to June of 2018, plaintiff attempted to work at Price Chopper. (T. 635). Plaintiff worked as an overnight stocker for approximately 21-30 hours per week, but had to quit because he was unable to climb the ladders, stoop as frequently as required, or lift the amount of weight that was required for the job.[3] (T. 635). Plaintiff also testified that the job required him to be on his feet all of the time, and the frequent stooping bothered his back, hip, and knees. (T. 636).

From late 2017 to early 2018, plaintiff performed work as a shipping loader at the Family Dollar Store. (T. 636). However, he testified that he only worked there for three months because he was required to work 7 to 10-hour shifts, and he was unable to perform the rapid, repetitive lifting, from 5 to 80 pounds. (*Id.*) Plaintiff testified that, during the time that he worked at the Family Dollar, his back and knees bothered him so much that, in the morning, he could barely walk or move. (*Id.*)

Finally, for approximately one month in 2018, plaintiff worked at Mohawk Equipment, a hospital supply company. (T. 637). Plaintiff testified that this was a "picker position" in which he loaded hospital supplies onto a pallet, using a "pallet jack." (*Id.*) Plaintiff stated that he could not perform the physical requirements of the

---

[3] Plaintiff testified that the position required lifting anywhere from 5 to 50 pounds. (T. 635).

7

job, which included 8 to 10-hour shifts, being on his feet all day, and repetitive up and down movement. (*Id.*)

ALJ Koennecke also questioned plaintiff about the knee surgery that he had since the last ALJ's hearing. (T. 638).  Plaintiff testified that the meniscus surgery went well, but that he still had pain in his knees, attributable to his arthritis. (*Id.*)  Plaintiff stated that it was "unbearable" to stand after long periods of walking. (*Id.*)  Plaintiff estimated that he could only walk for ten minutes and stand for fifteen minutes because his knees and his back would begin to bother him. (*Id.*)  Plaintiff stated that he tried not to kneel at all because he was afraid that he would never be able to get up. (*Id.*)

Plaintiff testified that approximately twice per month, he experienced "blackouts," but they did not happen "a lot," and that "everything just kind of goes . . . blurry . . . for a few minutes . . . ." (T. 639).  Plaintiff testified that he believed that his physical condition was getting worse. (T. 640).  He also stated that he was still in "mental treatment," but the medication, counseling, and treatment "definitely helps." (*Id.*)

The VE explained the vocational requirements of plaintiff's past relevant work, and stated that because of the weight that plaintiff was required to lift or the pressure that he needed to exert on the books, the picker job was "very heavy" as performed, and the forklift operator was "heavy" as performed.[4]  The ALJ posed a hypothetical question, asking the VE to assume that an individual was "younger," with a high school education, and past relevant work as discussed above. (T. 647).  The ALJ's hypothetical

---

[4] The VE testified that the Dictionary of Occupational Titles ("DOT") classified both jobs as "medium" level exertion. (T. 646).

8

also asked the VE to assume that the individual could stand or walk for five hours during an eight-hour workday and could spend "the rest of the time" sitting. (T. 647). The individual would need to change positions every forty-five minutes for just one to two minutes, could not climb ladders, ropes or scaffolds, was capable of "occasional postural movements [of] all other types," but was precluded from dangerous work-related hazards such as unprotected heights and moving machinery. (T. 647). Mentally, the individual was limited to detailed, but not complex, work tasks, which did not involve a "fast assembly quota," and he would be off-task up to five percent of the workday. (T. 647).

The VE testified that, based on the above hypothetical, the individual could not perform plaintiff's past relevant work, but could perform the jobs of storage facility rental clerk (unskilled, light work with 27,000 jobs in the national economy) and photocopying machine operator (unskilled light work with 13,000 in the national economy). The VE also testified in detail as to how she arrived at the job numbers. (T. 648). The VE specifically stated that she also used her experience with "placement activities with employers," because the DOT does not address changes in position. (T. 649). The VE testified that there were also sedentary jobs that such an individual could perform, such as charge account clerk (unskilled, sedentary with 5000 jobs in the national economy), food and beverage order clerk (unskilled, sedentary with 4000 in the national economy), and call-out operator (unskilled, sedentary with 13,000 in the

national economy). All of the jobs would require frequent reaching.[5] (T. 650).

Plaintiff's counsel asked the VE if the light work jobs would require "some degree of pushing and pulling ability." (T. 651). The VE answered in the affirmative, stating that the light work jobs would require "exerting" up to 20 pounds of force "occasionally." (*Id.*) The VE also testified that, if an individual needed to change positions "at will" or could not stoop at all, he would not be able to perform any of the jobs. (T. 651). The VE further stated that, in order to perform sedentary jobs, the individual must be able to sit for at least 20 to 25 minutes before standing in order to complete job duties and could not leave the work station "at will to walk because it would result in an excessive amount of time off-task." (T. 652). Finally, the VE testified that all jobs would be eliminated if the individual were unable to reach at all. (T. 652). Reaching is defined as "[e]xtending the arms in any direction away from the body." (T. 653).

There is a great deal of medical evidence in the record, much of which is not relevant to this decision. The ALJ conducted a detailed discussion of the medical and other evidence of record in her lengthy decision. (T. 557-75). Rather than summarizing the medical evidence at the outset, I will refer to the pertinent records during my discussion of the plaintiff's argument.

## IV. THE ALJ'S DECISION

After finding that plaintiff had not engaged in substantial gainful activity

---

[5] The VE defined "reaching" as "[e]xtending the arms in any direction away from the body." (T. 653). Plaintiff does not allege that he has any simple reaching limitations. In any event, plaintiff's activities, such as bowling, basketball, and volleyball, are inconsistent with any significant reaching limitation.

("SGA") since his original onset date of July 15, 2011,[6] the ALJ found that plaintiff had the following severe impairments at step two of the sequential analysis: lumbar spine impairment, left knee degenerative joint disease, right hip impairment, and obesity. (T. 557-61). The ALJ conducted an extensive analysis of all of plaintiff's other impairments, finding that some did not meet the 12-month durational requirement, some were non-severe,[7] and some were not medically determinable impairments. (*Id.*)

At step three of the sequential evaluation, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment. (T. 561-62). In making this determination, the ALJ considered Listing 1.02 (major dysfunction of a joint); Listing 1.03 (reconstructive surgery of a major weight-bearing joint); Listing 1.04 (disorders of the spine); Listing 11.08 (spinal chord disorders); Listing 11.14 (peripheral neuropathy); Listing 14.09 (inflammatory arthritis); "and near listings under 1.00 for musculoskeletal impairments, 11.00 for neurological disorders, and 14.00 for impairments of the immune system." (T. 561). The ALJ also considered the effect of plaintiff's obesity. (*Id.*)

At step four the ALJ determined that the plaintiff had the following RFC:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant has the following additional limitations: is limited to 5 hours of standing and/or walking and the rest of the day sitting in an 8-hour workday; needs an opportunity to change position every 45 minutes for 1-2 minutes; is

---

[6] The ALJ found that the work that plaintiff performed after his onset date did not rise to the level of SGA, but she considered the plaintiff's work activity after 2011 in determining his RFC. (T. 557).

[7] None of plaintiff's mental impairments were considered severe. (T. 558-60).

11

>precluded from climbing all ladders, ropes, and scaffolds; is limited to occasional postural motions; is precluded from all dangerous work hazards, such as unprotected heights and exposure to moving machinery; is limited to detailed, but not complex, work tasks not involving a fast assembly quota pace; and will be off-task up to 5 percent of the workday due to symptom exacerbations.

(T. 562). In making this determination, the ALJ conducted a detailed discussion of the medical evidence of record and considered plaintiff's stated symptoms and activities. (T. 562-75). The ALJ engaged in a lengthy discussion of plaintiff's daily activities, including social and athletic activities and his work attempts, finding that these activities "[do] not support the degree of limitation alleged by the [plaintiff]." (T. 565). Plaintiff's "work activity," although not rising to the level of SGA, "does indicate that his activities of daily living have, at least at times, been somewhat greater than was alleged by the [plaintiff]." (*Id.*) The ALJ also discussed the weight that she afforded the reports by medical and other providers, including a thorough discussion of the two medical providers who were the subjects of Chief Judge Suddaby's remand order. (T. 566-75). The ALJ also discussed the determinations of other agencies and their relative weight in the Social Security analysis. (T. 567-68).

Based on the above RFC, at step four of the sequential analysis, the ALJ found that plaintiff could not perform his past relevant work. (T. 575-76). However, after a thorough discussion of the VE's testimony and findings, the ALJ determined that jobs exist in significant numbers for the plaintiff. (T. 576-78). The ALJ concluded that plaintiff was not disabled from his June 15, 2011 date of onset through the date of the ALJ's decision. (T. 578-79)

## V. ISSUES IN CONTENTION

Plaintiff raises the following argument in support of his position that the ALJ's decision is not supported by substantial evidence:

1. The ALJ committed reversible error in failing to perform a function-by-function analysis prior to making plaintiff's RFC determination. (Point I) (Pl.'s Br. at 6-9) (Dkt. No. 9).

Defendant argues that the Commissioner's decision is supported by substantial evidence. (Def.'s Br. at 3-8) (Dkt. No. 12). For the following reasons, this court agrees with the defendant and will affirm the Commissioner's decision.

## VI. RFC

### A. Legal Standards

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's

subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

 **B.** **Application**

 Plaintiff's only argument is that the ALJ's RFC evaluation is not supported by substantial evidence because she failed to conduct a "function-by-function" analysis of the plaintiff's exertional abilities, particularly with respect to the plaintiff's ability to push and pull.  As stated above, however, the ALJ found that plaintiff could perform "light work," consistent with the definition of light work contained in the regulations, together with additional limitations on the plaintiff's ability, inter alia, to sit, stand,

walk, and change positions. (T. 562) (citing 20 C.F.R. 404.1567(b) and 416.967(b)). The regulations define light work as

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involved sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. 404.1567(b) and 416.967(b).  Plaintiff argues that in failing to specify how much weight the plaintiff could push or pull, the ALJ's RFC evaluation is fatally flawed because there is evidence in the record that plaintiff has some limitations in pushing and pulling.

Plaintiff cites two medical source statements that allegedly support his argument. First, counsel cites an April 16, 2012 treatment note authored by Dr. Michael Zahn,[8] M.D. and Michael Failing, RPAC, stating that plaintiff would be "'appropriate for a job without a lot of heavy lifting, pushing, or pulling.'" (Pl.'s Br. at 8) (citing T. 237).  The second opinion cited by counsel is a statement by Dr. Marc Bergeron, M.D.[9] stating that plaintiff should not push, pull, lift, or carry more than 25 pounds occasionally, 12 pounds frequently." (*Id.*) (citing T. 543).  Plaintiff's counsel states that "overall, the

---

[8] Plaintiff was referred to orthopedic surgeon, Michael Zahn in March of 2012 for a consultation on plaintiff's hip, after an MRI showed a labral tear. (T. 235-38, 240).  Michael Failing is a Physicians' Assistant who works with Dr. Zahn and also signs some of the reports.  The April 16, 2012 treatment note states that plaintiff was initially seen for his back by Dr. Rudolph A. Buckley, a spine surgeon who also practices at Hamilton Orthopedic Surgery. (T. 235, 240).

[9] Plaintiff was evaluated on July 23, 2012 by orthopedic surgeon, Dr. Marc Bergeron, Superior Medical Consultants, for purposes of Workers' Compensation. (T. 535-44).

15

[ALJ] gives only partial weight to these opinions, however, does not specifically address the limitations on pushing and pulling given."[10] (Pl.'s Br. at 8).

Neither of the opinions cited support the plaintiff's argument. In *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013), the Second Circuit refused to adopt a per se rule, requiring remand if the ALJ fails to provide a "function-by-function" analysis. The relevant inquiry is whether the ALJ applied the "correct legal standards and whether . . . the determination is supported by substantial evidence. *Id.* The court further stated that

> [w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, we agree with our sister Circuits that remand is not necessary merely because an explicit function-by-function analysis was not performed.

*Id.* (citing inter alia *Zatz v. Astrue*, 346 F. App'x 107, 111 (7th Cir. 2009) ("[A]n ALJ need not provide superfluous analysis of irrelevant limitations or relevant limitations about which there is no conflicting medical evidence."))

In this case, the ALJ limited plaintiff to a range of light work. The ALJ did not cite a specific weight limitation on "pushing and pulling," at the hearing. However, at the hearing, plaintiff's counsel asked the VE whether light work required "some degree of pushing and pulling ability." (T. 651). In response, the VE stated that light work "is

---

[10] In his report, Dr. Bergeron made other assessments of plaintiff's abilities, but the ALJ specifically analyzed which portions of the report she was relying on and why she chose to give less weight to other statements made by this physician (T. 570-71), and plaintiff's argument only involves the finding with respect to pushing and pulling.

16

characterized as up to 20 pounds - - exerting up to 20 pounds of force occasionally." (T. 651). This is the same weight limitation as for lifting and carrying. Including such a finding in the RFC would have been superfluous. By limiting plaintiff to light work, the ALJ did not need to further explain the required "pushing and pulling" ability. According to the VE, the maximum weight that an individual would be required to push or pull is inherent in the definition of light work.[11]

Even if the court were to determine that the ALJ erred in failing to specify that plaintiff would be required to push or pull up to 20 pounds occasionally and 10 pounds frequently, any error would be harmless. According to *Cichocki*, *supra*, remand is not automatically required, even without a function-by-function analysis.[12] Instead, the

---

[11] The VE's statement is supported by the Social Security Rulings ("SSR"), the Dictionary of Occupational Titles ("DOT") and the Selected Characteristics of Occupations ("SCO") defined in the DOT. (Def.'s Br. at 5-6). As defense counsel points out, SSR 83-14 states that the term "exertional" has the same meaning in the Social Security Regulations as it does in the DOT. SSR 83-14, 1983 WL 31254, at *1 (Jan. 1, 1983). In the SCO (a DOT supplement), occupations are classified as sedentary, light, medium, heavy, and very heavy, depending upon the degree of primary strength requirements of those occupations. *Id.* There are three work positions – standing, walking, and sitting, as well as four worker movements of objects – lifting, carrying, pushing, and pulling. *Id.* The SCO defines light work as requiring the exertion of "up to 20 pounds of force occasionally, or up to 10 pounds of force frequently, or a negligible amount of force consistently to move objects." Selected Characteristics of Occupations in the Revised Dictionary of Occupational Titles, App. C, § 1 (U.S. Dep't of Labor 1993). The SCO makes it clear that light work required no more that 20 pounds of "exertion," whether that is in the form of lifting, carrying, pushing, or pulling. Thus, an individual limited to light work would not be expected to push or pull more than 20 pounds occasionally.

[12] Most of the cases cited by plaintiff predate *Cichocki*, and some of those cases ordered remand for additional deficiencies in the ALJ's decision. *See Rockwood v. Astrue*, 614 F. Supp. 2d 252, 280 (N.D.N.Y. 2009) (case predates *Cichocki*, and the court notes that the ALJ's decision did not contain any specificity regarding the plaintiff's functional abilities); *Crysler v. Astrue*, 563 F. Supp. 2d 418, 443-44 (N.D.N.Y. 2008) (case predating *Cichocki* and remanded for a multitude of other errors); *Bennett v. Astrue*, No. 1:06-CV-549 (NAM), 2009 WL 1035106, at *13 (N.D.N.Y. Apr. 17, 2009) (predated *Cichocki*, and case was also remanded based on a violation of the treating physician rule); *Hluska v. Astrue*, No. 6:06-CV-0485 (LEK/VEB), 2009 WL 799967, at *19 (N.D.N.Y. Mar. 25, 2009) (case predated *Cichocki*, and was remanded primarily because the ALJ failed to follow the treating physician rule - court merely stated that on remand, the ALJ should also perform a function-by-

court must review the record to determine whether the RFC finding was supported by substantial evidence. In *Cortez v. Comm'r of Soc. Sec.*, No. 7:16-CV-1012 (CFH), 2017 WL 3524674, at *10-11 (N.D.N.Y. Aug. 15, 2017), the court found that the ALJ's omission of a function-by-function assessment did not merit remand, [m]ost notably, [when] there is no evidence indicating that physical limitations existed that were not encompassed within the overall category of sedentary work," plaintiff did not cite any evidence showing that he had greater limitations, and the ALJ's findings were supported by substantial evidence. *See also Columbel v. Comm'r of Soc. Sec.*, No. 6:16-CV-773 (CFH), 2017 WL 3175599, at *13 (N.D.N.Y. July 26, 2017) (court did not remand under *Cichocki* for failure to perform a function-by-function analysis when plaintiff failed to point to medical evidence suggesting an inability to perform the basic requirements of the exertional category of work assessed by the ALJ).

As stated above, neither of the medical records cited by plaintiff is inconsistent with a finding that plaintiff could occasionally push or pull up to 20 pounds and frequently push or pull up to 10 pounds. Dr. Zahn stated that plaintiff would be "appropriate" for a job without any "***heavy*** lifting, pushing, or pulling." (T. 237). This statement is not inconsistent with a finding that plaintiff could push or pull up to 20 pounds occasionally and 10 pounds frequently. Dr. Bergeron's statement that plaintiff should be limited to pushing, pulling, lifting, or carrying more than 25 pounds

---

function analysis); *Miles v. Barnhart*, No. 6:06–CV–391 (LEK/GHL), 2008 WL 5191589, at *9 (N.D.N.Y. Dec. 8, 2008) (predating *Cichocki* and remanding after finding that failure to do a function-by-function analysis was not harmless error in that case). The only cased cited by plaintiff that post-dated *Cichocki* is *Merkley v. Comm'r of Soc. Sec.*, No. 7:16-CV-1394 (GTS), 2017 WL 4512448, at *8-9 (N.D.N.Y. Oct. 10, 2017) (remanding after determining that the failure to perform an analysis of plaintiff's reaching ability was not harmless error).

occasionally and 12 pounds frequently is more than plaintiff would be required to perform in a light work occupation.  Thus, Dr. Bergeron's statement is not inconsistent with a finding that plaintiff could perform light work.  The ALJ discussed both Dr. Zahn and Dr. Bergeron in her decision. (T. 570).

A review of the ALJ's decision, in general, also supports her RFC determination. The ALJ discussed plaintiff's ability to push and pull in her discussion of the report of consultative physician Dr. Brian Cole. (T. 566).  The ALJ refers to pushing and pulling ability and specifically states that the plaintiff's "ability to push and pull is unlimited, other than for the weight limits already established by the light exertional level." (T. 566).  Although, not very clear, the ALJ appears to mean that plaintiff's ability to push and pull is unlimited up to the amount established by the definition of light work. Clearly, the ALJ considered plaintiff's ability to push and pull.

The ALJ's also discussed plaintiff's daily activities at length, which at times during the relevant period, included bowling, basketball, and volleyball. (T. 565, 570). On February 23, 2016, plaintiff reported to his counselor that he had been going to the bowling alley to "practice for his upcoming league." (T. 1365).  On March 3, 2017, plaintiff told the nurse in Dr. LaFrance's[13] office that he had "returned to playing basketball and volleyball" after his 2016 knee surgery. (T. 2103). The ALJ concluded, based upon reports from plaintiff's treating physicians, Dr. Zahn, Dr. Russell LaFrance, M.D., and PA Failing, that the plaintiff retained "considerable physical capacity, except for work involving high-impact activities or heavy lifting, pushing, or pulling." (T.

---

[13] Dr. LaFrance is one of plaintiff's orthopedic surgeons. (T. 2100-2101) (2016 surgical report).

570). None of these activities are inconsistent with a finding that plaintiff may push or pull sufficient weight to be able to perform light work activities. The medical records support the ALJ's findings. Thus, the ALJ's RFC determination is supported by substantial evidence.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner is **AFFIRMED** and this case **DISMISSED**, and it is

**ORDERED**, that the Clerk enter judgment for **DEFENDANT**.

Dated: May 27, 2020

Andrew T. Baxter
U.S. Magistrate Judge